# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY FREEMAN,<br><br>    Plaintiff,<br><br>v.<br><br>JACK ST. CLAIR, et al.,<br><br>    Defendants. | Case No. 1:18-cv-00621-AWI-BAM (PC)<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AMENDED COMPLAINT<br><br>**THIRTY-DAY DEADLINE** |

Plaintiff Larry Freeman ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. Plaintiff's complaint, filed on May 7, 2018, is currently before the Court for screening. (ECF No. 1.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

## II.     Plaintiff's Allegations

Plaintiff is currently housed at the California Substance Abuse Treatment Facility in Corcoran, California.  The events in the complaint are alleged to have occurred while Plaintiff was housed at the Sierra Conservation Center in Jamestown, California.  Plaintiff names the following defendants: (1) Chief Medical Executive Dr. Jack St. Clair; (2) Dr. Steven Smith; (3) Dr. Georgia Thomatos; (4) Dr. Michael Forster; (5) Dr. William Savage; (6) Officer D. O'Shea; (7) Officer T. Younan; (8) Officer J. Diaz; and (9) Officer B. Tyra.  Defendants are being sued in their individual and official capacities.

Claim I

In Claim I, Plaintiff asserts a claim of excessive force in violation of the Eighth Amendment. Plaintiff alleges that he suffers from chronic, severe back and related pain that restricts his sitting. Due to a MRI evaluation and examination, outside surgeon and specialist, Dr. Bai, recommend Lumbar Epidural Spinal Injections ("LESI").  The LESI was agreed upon by Plaintiff and Defendants Dr. St. Clair, Dr. Smith and Dr. Forster and was scheduled for April 28, 2016.

On April 28, 2016, Plaintiff was to be transported to Manteca for a LESI procedure. Defendants Younan, O'Shea, Diaz and Tyra were assigned to transportation.  Due to a documented

inability to sit beyond thirty (30) minutes—and not at all on a moving object—Defendant Forster assured Plaintiff special transport so that Plaintiff could avoid bending and climbing into a vehicle and would allow him to lie down during transport.

Plaintiff was one of two inmates to be transported the morning of April 28, 2016. The first vehicle to arrive was a van driven by Defendants Diaz and Tyra. Defendant Diaz, unaware of the special transport protocol, confirmed the protocol and informed Plaintiff to wait for a sedan to arrive in five minutes. Defendants Diaz, Tyra and their inmate passenger neared the vehicle security checkpoint and were met by another van driven by Defendants Younan and O'Shea. Both vans parked and all four defendants—Diaz, Tyra, Younan and O'Shea—met at the gate and had a lengthy conversation. These defendants then walked to where Plaintiff stood. Defendant Younan told Plaintiff if he climbed into the van, then he could lie down. Plaintiff declined. When asked why, Plaintiff explained Dr. Bai's findings and also explained that pain of bending and the risk that trying to bend and climb could press the herniated disc, causing pain or falling. Plaintiff additionally described the possible loss of sanitary bodily functions and the protocol for the sedan. Defendant Younan then yelled, "If you can sit to get in a car why can't you sit and ride." (ECF No. 1 at 8.) Plaintiff was in pain and told Defendants Younan, O'Shea, Diaz and Tyra that he had not taken any pain medication since the previous day. He also told them how the pain in his lower back and tail bone worsened the longer he sat. Defendant Younan began to berate Plaintiff and yelled that Plaintiff was a liar and that they had never transported anyone that way. Plaintiff disagreed, stating that they had taken him to Stockton and Manteca by that protocol and that they just told him he could lie down in the van. Plaintiff told them that he would have the doctor contact the supervisor to clear up the problem. Defendant Younan agreed and told Plaintiff to come through the gate so that they could go talk to his doctor. Plaintiff declined, saying it was closer for him to go another way. As Plaintiff turned, he heard Defendant Younan say "that niggers not getting a car." (Id. at 10.)

When Plaintiff and Defendant Younan met with Defendant Michael Forster, Defendant Younan threatened that he would get a sedan, but would have to restrain Plaintiff in an upright, seated position. Defendant Forster and Defendant Younan then met in an office, where loud

3

laughter was later heard.

Plaintiff claims that he has suffered injuries in the form of pain, shame, humiliation, degradation, emotional distress, embarrassment and mental distress.

Claim II

In Claim II, Plaintiff appears to allege a claim for racial discrimination and violations of the Eighth, Fourth and Fourteenth Amendments against Defendants Younan, O'Shea, Diaz and Tyra for the incident described in Claim I. He assets that the use of the word "nigger" also transformed the incident into a violation of his Eighth and Fourteenth Amendment rights. He alleges emotional injuries, limited physical activities and pain because he was denied access to a specialist procedure.

Claim III

In Claim III, Plaintiff alleges that he was denied access to medical care in violation of the Eighth Amendment by Defendants Dr. St. Clair, Dr. Smith, Dr. Thomatos, Dr. Forster and Dr. William. Plaintiff claims that these defendants destroyed medical documents and created medical documents with misinformation that facilitated denial of his 602 appeal regarding transportation.

On the day that Defendant Forster informed Plaintiff that the LESI injections were to begin, an information printout was provided. The doctor underlined information and stated that Plaintiff could continue to take his pain up to 6 hours before his procedure.

On April 21, 2016, Plaintiff was told to cease taking his blood thinner medications and ibuprofen, which the nurse told him was a blood thinner. After a full day of no medication, the nurse had not heard back from Defendant Forster and the original order was back in effect. The nurse later instructed Plaintiff to cease food and liquids at midnight on April 27, 2016. When told of the continued use of ibuprofen, the nurse became agitated and told Plaintiff that he should have stopped taking it a week prior. The nurse intended to inform medical.

The next day, when Plaintiff sought his doctor's aide regarding transportation, the doctor asked if Plaintiff wanted to cancel. Plaintiff did not want to cancel and did not like that Defendant Forster did not tell Defendant Younan to honor the transport protocol. Plaintiff appears to allege that Defendant Forster was not going to reschedule the appointment because of the cancellation.

Plaintiff submitted 602s regarding the cancellation and the transportation issue. Plaintiff

contends that all relevant appeals were manipulated into denials or a denial of the need for the protocol. Plaintiff claims collusion by medical because they continued to state that there was no need to lie down to travel.

On June 2, 2016, Defendant Forster apologized to Plaintiff, stating that they would not let him do what he needed to help. He also told Plaintiff that the lie down order was not in the computer, but the reasons Plaintiff needed it were not removed. Defendant Forster then provided Plaintiff with an accommodation list form identifying the limits and inabilities.

On June 7, 2016, Defendant Thomatos entered the computer and removed the medically necessary restrictions from the accommodation list form.

In November 2016, Defendant Savage became Plaintiff's primary care physician. In October, Plaintiff was noted to need a sedan with no more than 15 minutes sitting.

Between October 2016 and January 2017, Plaintiff was observed, examined and his medical records were reviewed by another doctor, including Defendant Dr. St. Clair. At a 602 hearing/exam, Plaintiff was informed that there was no reason he should not be allowed to lie down for transport for LESI. Plaintiff was ecstatic that it was a partial grant by Dr. St. Clair. However, when the 602 was officially responded to, the findings were denied. At the third level of review, Plaintiff was contacted, and he reported what was being done with his care and entries on the computer, including Defendant Dr. Thomatos' removal of medically necessary accommodations without a rationale.

Plaintiff further alleges as follows:

> Defendant Steven Smith layed [sic] a groundwork to sabotage Plaintiffs efforts by using a portion of the Report found invalid because the report did not match the event of the day at Stockton MRI evaluation/exam. [¶] The evaluation with Dr. Senegor alledged [sic] surgery(s) Plaintiff has never had, that also Plaintiff has no pain, that was the report, found invalid as a mix up of reports clearly, because the evaluation events and determinations matched those of Dr. Bais of Manteca. [¶] Defendant Smith has taken the phrase MRI does not match [symptomology] that were it accurately applied concerning Plaintiff it would translate into Patient has pain. [¶] Defendant aware of Dr. Senegor report as invalid is himself one of the doctors he Defendant Smith along with Defendant J. St. Clair and Defendant were the Panel to consider it invalid and arrange a MRI evaluation/exam with Dr. Bai. [¶] And Defendant Dr. Savage has said and confirmed—acting on behalf of Defendant St. Clair---that he Defendant Savage "can't do anything for until they tell me to"

5

(ECF No. 1 at 18.)

Requested Relief

Plaintiff seeks a declaratory judgment, along with compensatory and punitive damages.

**III. Discussion**

Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to state a cognizable claim for relief. As Plaintiff is proceeding pro se, he will be granted leave to amend his complaint to cure the identified deficiencies. To assist Plaintiff, the Court provides the pleading and legal standards that appear applicable to his claims.

**A. Federal Rule of Civil Procedure 8**

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

Plaintiff's complaint is not a short or plain statement of his claims. Plaintiff's complaint lacks clear factual allegations, and with many allegations, the Court cannot determine what happened, when it happened or what claims he is attempting to pursue. For example, the quoted allegations identified above are confusing, lack clarity and fail to state a cognizable claim against any individual. In any amended complaint, Plaintiff must clearly and succinctly allege what happened, when it happened and who was involved.

**B. Official Capacity**

Plaintiff may not pursue his claims for monetary damages against the named defendants in their official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dep't. of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh

Amendment does not bar suits seeking damages against state officials in their personal capacities, Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their official capacities, Austin v. State Indus. Ins. Sys., 939 F.2d 676, 680 n.2 (9th Cir. 1991). Thus, Plaintiff may only proceed in this action for monetary damages against defendants in their individual capacities.

### C. Eighth Amendment – Excessive Force

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v McMillian, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (quotations omitted).

For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Relevant factors for this consideration include "the extent of injury... [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. (quoting Whitley v. Albers, 475 U.S. 1078, 1085 (1986)).

In Claim I, Plaintiff appears to assert an excessive force claim against Defendants Diaz, Tyra, Younan and O'Shea. However, Plaintiff's complaint does not include allegations indicating that any measure of force was used by any of these defendants or that he suffered any physical injury from a purported use of force. Plaintiff is granted leave to amend this claim to cure these deficiencies to the extent he can do so in good faith.

### D. Eighth Amendment – Medical Care

In his claims, Plaintiff appears to allege deliberate indifference to his medical needs in violation of the Eighth Amendment. A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the

mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons v. Navajo Cty. Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. Cty. of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) ), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082–83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) ). Rather, Plaintiff "must show that the

course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

As best as the Court can determine from the complaint, Plaintiff is alleging that his Eighth Amendment right to medical care was violated by (1) the failure to provide him with a transportation protocol permitting him to lie down in a transport vehicle; and (2) the failure to transport him for an injection on one occasion. Neither of these purported denials rises to the level of an Eighth Amendment violation.

With regard to the denial of a transport protocol, Plaintiff's complaint suggests only a difference of opinion between a physician and Plaintiff—or between medical professionals—concerning what transportation protocol was necessary. This is not sufficient to support a cognizable Eighth Amendment deliberate indifference claim. Additionally, there is no indication that any of the transport officers were responsible for Plaintiff's treatment or any cancellation of treatment.

With regard to the one-time denial of an injection, this isolated incident also is not sufficient to state a cognizable deliberate indifference claim. There is no indication from Plaintiff's complaint that he was denied any other forms of treatment for his back condition or that he repeatedly was denied injections. Indeed, Plaintiff's complaint suggests that he had received multiple injections prior to the incident in April 2016. Further, there is no indication that Plaintiff subsequently was denied treatment (or injections) for his back.

### E. Fourteenth Amendment – Discrimination

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by demonstrating that the defendant intentionally discriminated against the plaintiff on the basis of the plaintiff's membership in a protected class, such as race. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

In Claim II, Plaintiff appears to assert a claim for discrimination based on Defendant

Younan's use of the word "nigger." However, the mere use of this statement is not sufficient to state a cognizable claim for discrimination. There is no indication from Plaintiff's complaint that any defendant intentionally discriminated against Plaintiff based on his membership in a protected class. At best, Plaintiff has alleged only that transportation officers wanted Plaintiff to be seated in the transport vehicle, not that he was treated differently from other inmates.[1]

To the extent Plaintiff seeks to impose liability against Defendant Younan arising out of any verbal harassment, he may not do so. Allegations of verbal abuse or harassment fail to state a constitutional claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (finding that "verbal harassment generally does not violate the Eighth Amendment"); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (holding that prisoner's allegations of threats allegedly made by guards failed to state a cause of action). Plaintiff's complaint thus fails to state a cognizable claim against Defendant Younan based on any purported verbal harassment or harassing statement.

### F. Grievance/Complaint Process

In Claim III, Plaintiff appears to assert claims arising out of the processing and/or denial of his 602 appeals. However, Plaintiff cannot pursue any claims against prison staff based solely on the processing and review of his inmate appeals. Plaintiff does not have a constitutionally protected right to have his appeals accepted or processed. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.19 88). The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993); see also Wright v. Shannon, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment). Denial or refusal to process a prison grievance is not a constitutional violation. Rushdan v. Gear, No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018). Accordingly, Plaintiff fails to state a cognizable

---

[1] Plaintiff also appears to assert a Fourth Amendment claim arising out of the same conduct. The nature of this claim is unclear. As noted above, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

10

claim arising out of the processing or review of his 602 appeals.

### G. Declaratory Relief

"A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

## IV. Conclusion and Order

For the reasons stated, Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to state a cognizable claim for relief. As Plaintiff is proceeding pro se, the Court will grant Plaintiff an opportunity to amend his complaint to cure the above-identified deficiencies to the extent he is able to do so in good faith. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local

11

Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified by the Court in this order or file a notice of voluntary dismissal; and

3. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

Dated: **April 24, 2019**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE